UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-cv-00101-LLK

**ROBERT MARK WILLIAMS**                                                            **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claims for disability benefits. Plaintiff's memorandum in support of fact/law summary is at Doc. 17, and the Commissioner's fact/law summary in opposition is at Doc. 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 11].

Plaintiff makes a single argument. Because the argument is unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**Background facts and procedural history**

In May 2019, Plaintiff was examined at the request of the Commissioner by Lisa King, Psy.D. [Administrative Record, Doc. 10 at 760]. Dr. King diagnosed unspecified attention deficit-hyperactivity and unspecified mood disorder "by history" and opined that Plaintiff has:

   1.  Moderate limitation in understanding, remembering, and carrying out instructions to perform simple, repetitive tasks.

   2.  Marked limitation in tolerating stress and pressure of day-to-day employment.

   3.  Moderate limitation in sustaining attention and concentration to perform simple, repetitive tasks.

   4.  Slight limitation in responding appropriately to supervisors and co-workers.

1

*Id.* at 761.

In June and September 2019, in light of Dr. King's findings and the record as a whole, the Commissioner's non-examining program psychologists, Shambra Mulder, Ph.D., and Dan Vandivier, Ph.D., opined regarding Plaintiff's mental impairments and limitations. *Id.* at 122-23, 159-61.

The ALJ found, among other things, that, notwithstanding his mental impairments (anxiety, depression, bipolar disorder, attention deficit hyperactivity disorder), Plaintiff can:

> … understand, remember, and carry out simple instructions and procedures involving brief initial learning periods of thirty days or less. He can maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation. He can tolerate occasional interaction with supervisors and co-workers, but can tolerate no interaction with the public. He can adapt to the changes and pressures of a routine work environment.

*Id.* at 32. In support, the ALJ rejected Dr. King's opinion of marked limitation in tolerating stress and pressure of day-to-day employment and generally accepted the opinions of the Commissioner's non-examining program psychologists. *Id.* at 37-38.

## Discussion

Plaintiff argues that the ALJ's residual functional capacity (RFC)[1] "determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of consultative examiner Lisa M. King, Psy.D." [Doc. 17 at PageID.2271].

The ALJ rejected Dr. King's opinion of marked limitation in tolerating stress and pressure of day-to-day employment, finding it to be unsupported by Dr. King's examination findings and inconsistent with Plaintiff's subsequent inpatient treatment in October 2019 and inconsistent with Plaintiff's daily activities:

---

[1] An individual's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the ALJ. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ -- not a physician -- ultimately determines a claimant's RFC."). As such, the ALJ bears the responsibility for determining THE claimant's RFC based on all relevant medical and non-medical evidence. *See* 20 C.F.R. § 404.1546(c), Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *7.

2

> The claimant attended a consultative examination with Lisa King, Psy.D., on May 28, 2019. He had normal motor activity, normal eye contact, responsive facial expressions, appropriate affect, neutral mood, and cooperative attitude. The claimant reported that he could independently bathe, dress, groom, and prepare simple foods. He reported that did not like to go out in public, but gathered with family for cookouts. He reported that he enjoyed watching television and listening to music. The claimant recalled directions without difficulty and had good recent and remote memory, but he had limited delayed recall. He had poor attention and concentration, but could recall digits forward and backward. He correctly answered one of three simple math calculations. He had normal speech, appropriate thought process, below average fund of knowledge, poor abstract reasoning, and estimated below average intellectual functioning. The claimant received diagnoses of unspecified attention deficit-hyperactivity and unspecified mood disorder, both by history only (Exhibit B4F).
>
> …
>
> Lisa King, Psy.D., opined that the claimant had moderate limitation in understanding, remembering, and carrying out instructions to perform simple, repetitive tasks; marked limitation in his ability to tolerate stress and pressure of day-to-day employment; moderate limitation in his ability to sustain attention and concentration to perform simple, repetitive tasks; and slight limitation in his capacity to respond appropriately to supervisors and co-workers (Exhibit B4F). I find this opinion somewhat persuasive to the extent that it is consistent with and supported by the remaining record, but find that the record does not support any marked limitations. For example, during a consultative examination, the claimant recalled directions without difficulty and had good recent and remote memory, but he had limited delayed recall. He could repeat five digits forward and four in reverse, but only correctly answered one of three simple math calculations. He had normal thought process, but estimated below average intellectual functioning (Exhibit B4F). The claimant generally had normal thought processes and intact memory during treatment visits (Exhibits B1F, B3F, B6F, B8F, B10F, and B12F). During inpatient treatment in October 2019, the claimant had intact memory, normal thought processes, normal thought content, intact insight, adequate fund of knowledge, and estimated average intellectual functioning (Exhibit B10F). The claimant testified that he graduated from high school had a valid driver's license, and occasionally drove a vehicle short distances. The claimant reported that he could independently bathe, dress, groom, and prepare simple foods (Exhibit B4F).

[Doc. 10 at 35, 38].

Plaintiff argues that, in so finding, the ALJ engaged in prohibited "cherry picking," or "picking and choosing," of certain items of evidence, while "ignoring," "selecting," or "glossing over" other items of evidence. [Doc. 17 at PageID.2273-75].

The argument is unpersuasive for four reasons.

First, allegations that the ALJ cherry-picked the evidence are "seldom successful because crediting it would require a court to re-weigh record evidence," which is prohibited on judicial review. *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) citing *White v. Comm'r*, 572 F.3d 272, 284 (6th Cir.

2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Second, Plaintiff's cherry-picking argument is conclusory. Plaintiff does not identify any particular evidence, which the ALJ allegedly ignored or minimized, that supported Dr. King's finding of marked limitation in tolerating stress and pressure of day-to-day employment. At the administrative hearing, the vocational expert (VE) testified, among other things, that Plaintiff would be unemployable if, due to his impairments, he requires being off task 10 percent or more of the workday and/or being off work 1 day or more per month. [Doc. 10 at 79-80]. Plaintiff does not allege or show that Dr. King's findings, if accepted, would necessarily result in a disabling level of job absenteeism and/or off-task time.

Third, because Plaintiff filed his disability claims in February 2019 [Doc. 10 at PageID.324, 326], the new rules for weighing medical opinions apply. See 20 C.F.R. § 404.1520c ("For claims filed … on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 404.1527 apply.").

Under the new rules, the Commissioner (ALJ) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). The ALJ may, but is not required to, explain how the ALJ considered the factors in paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(2)-(3).

The ALJ's rejection of Dr. King's finding of marked limitation in tolerating stress and pressure of day-to-day employment comported with the foregoing standards.

Fourth, even under the old rules for weighing medical opinions, which are generally regarded as more claimant favorable, the ALJ's decision would have been proper.

Under the old rules, there was a hierarchy of medical opinions from acceptable medical sources, with treating source opinions at the top. *Russell v. Comm'r*, No. 320CV00852BJBRSE, 2022 WL 635427, at *2 (W.D. Ky. Feb. 4, 2022) (report adopted). Opinions of examining sources, who often see and examine a claimant only once, were next in the hierarchy, followed by non-examining source opinions at the bottom. *Id.* The so-called "treating physician rule" required that a treating source medical opinion be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2).

Because Dr. King was a one-time examining (as opposed to a treating) source, her opinion would not have been entitled to controlling weight, and the ALJ would not have been required to give particularly "good reasons" for the weight given to her opinion. *See* 20 C.F.R. § 404.1527(c)(2). While "[g]enerally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you," 20 C.F.R. § 404.1527(c)(1); an ALJ may prefer the non-examining source opinion if it "provides more detailed and comprehensive information than what was available to the individual's treating" or examining source or if it is "more consistent ... with the record as a whole." *Brooks v. Comm'r*, 531 F. App'x 636, 642 (6th Cir. 2013). In this case, the non-examining program psychologists took into account Dr. King's findings, and the ALJ found those opinions to be more persuasive. [Doc. 10 at 37, 123, 161].

**Order**

Because Plaintiff's argument is unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

May 3, 2022

Lanny King, Magistrate Judge
United States District Court